In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1478

MICHAEL MASSEY, inmate at the Federal
Correctional Center in Pekin, Illinois, ANTHONY
LEISURE, inmate at the Federal Correctional Center in
Pekin, Illinois, JERMAINE FRANKLIN, inmate at the Federal
Correctional Center in Pekin, Illinois, et al.,

Plaintiffs-Appellants,

v.

DAVID W. HELMAN, Warden of the Federal
Correctional Center in Pekin, Illinois, in his
official and individual capacity, FERDINAND SOMALIA,
Health Services Administrator of the Federal
Correctional Center in Pekin, Illinois,
in his official and individual capacity,
MIGUEL GONZALEZ, Assistant Warden of the
Federal Correctional Center in Pekin,
Illinois, in his official and individual
capacity, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 C 3020--Richard Mills, Judge.

ARGUED OCTOBER 26, 2000--DECIDED July 30, 2001

  Before BAUER, POSNER and RIPPLE, Circuit
Judges.

  RIPPLE, Circuit Judge.  Michael Massey
and thirteen other inmates (collectively
"Mr. Massey") at the Federal Correctional
Center in Pekin, Illinois ("FCC Pekin" or
"the prison"), brought this Bivens action
against the warden, the assistant warden,
the health services administrator, and
the medical director of the Bureau of
Prisons (collectively "the
defendants")./1 Mr. Massey sought money
damages for alleged violations of the
Eighth Amendment. On the defendants'
motion, the district court dismissed Mr.
Massey's complaint without prejudice for
failure to exhaust administrative
remedies. Mr. Massey now appeals. We
deferred our decision in this case until
the Supreme Court of the United States
rendered its decision in Booth v.

Churner, 121 S. Ct. 1819 (2001). For the reasons set forth in the following opinion, we now affirm the judgment of the district court.

I

BACKGROUND

A. Facts/2

Prior to his incarceration at FCC Pekin in March 1996, Mr. Massey suffered an abdominal hernia. Dr. John Otten, a physician at FCC Pekin, recommended that Mr. Massey have surgery to repair the hernia, but no surgery was arranged immediately. Indeed, Mr. Massey's hernia was not repaired surgically until January 28, 1998./3

FCC Pekin maintains an administrative review procedure through which inmates can raise grievances regarding the conditions of their confinement, including their medical care. The procedure requires the sequential filing of four forms. First, an inmate must file a form called a BP-8 with the prison staff./4 If the inmate is dissatisfied with the response he receives, he must file a BP-9 seeking administrative review with the warden. See 28 C.F.R. sec. 542.14(a). If the inmate is dissatisfied with the warden's resolution of his grievance, he has twenty days to file a BP-10 with the Bureau of Prisons' regional director. See 28 C.F.R. sec. 542.15(a). If the inmate is dissatisfied with the regional director's disposition, his fourth and final appeal must be made to the Bureau of Prisons' general counsel by filing a BP-11 within thirty days. See id.

B. Procedural History

1.

Mr. Massey never used FCC Pekin's four-step administrative review procedure to protest the quality of the medical care he had received./5 Instead, he embarked on a course of litigation against various officials at FCC Pekin, including the defendants in this case. See Massey v. Helman, 196 F.3d 727 (7th Cir. 2000), cert. denied, 121 S. Ct. 2214 (2001) ("Massey I"); see also Massey v. Wheeler,

221 F.3d 1030 (7th Cir. 2000) ("Massey II"). Mr. Massey filed his first suit, Massey I, prior to the time his hernia was repaired surgically; he alleged that the defendants violated his Eighth Amendment rights by maintaining policies that deprived him of necessary medical care for his hernia. See Massey I, 196 F.3d at 731. We upheld the district court's dismissal of his complaint for failure to exhaust his administrative remedies as required by 42 U.S.C. sec. 1997e(a). See id. at 732-35. We held that, because Mr. Massey's hernia had not yet been repaired at the time he filed suit, the administrative grievance procedure might have provided him with some form of relief; therefore, administrative remedies were available to him within the meaning of sec. 1997e(a). See id. at 734./6

2.

Mr. Massey filed the present suit on January 20, 1999, after his hernia had been repaired surgically. He raised the same Eighth Amendment claims he had raised in his first suit. The defendants moved to dismiss Mr. Massey's complaint on March 24, 1999, for failure to exhaust administrative remedies. The defendants attached to their motion fourteen affidavits, one for each plaintiff, that indicated that none of the plaintiffs had completed the four-step administrative review process.

On April 8, 1999, Mr. Massey filed an amended complaint in which he alleged that administrative remedies were unavailable to him because he sought only money damages that the grievance procedure could not provide. Mr. Massey subsequently submitted to the district court a copy of a form he gave to his unit manager, Suzanne Wheeler. The form-- dated February 19, 1999--asked that Wheeler provide Mr. Massey with the BP-8, 9, 10, and 11 forms. Wheeler returned Mr. Massey's written request with a notation that the BP forms were given out one at a time, and, that if Mr. Massey wanted the forms for litigation, he would have to obtain them through discovery.

On the basis of Wheeler's refusal to provide him with the four BP forms, Mr. Massey argued to the district court that there were no administrative remedies

available to him because he was being denied the forms he needed to use the prison's grievance procedure. Mr. Massey also asked that the district court convert the defendants' motion to dismiss into one for summary judgment because the defendants had attached affidavits to the motion. Lastly, Mr. Massey asked that he be allowed to conduct discovery to explore his claim that administrative remedies were unavailable.

The district court denied each of Mr. Massey's requests and granted the defendants' motion to dismiss. Relying on our decisions in Massey I and Perez v. Wisconsin Department of Corrections, 182 F.3d 532 (7th Cir. 1999), the district court held that Mr. Massey was required to exhaust the prison's administrative review process, even if that process could not provide him with the money damages he sought. The court noted that Mr. Massey had alleged in his complaint only that administrative remedies would not provide him the relief he sought; he had not alleged that he had exhausted the prison's administrative remedies, as required by sec. 1997e(a). Further, the court stated that it did not rely on any of the affidavits the parties submitted in reaching its decision to grant the defendants' motion. Therefore, the court did not convert the motion to dismiss into one for summary judgment.

The court also was unpersuaded by Mr. Massey's claim that he was denied the forms he needed to use the prison's grievance process. The court noted that Mr. Massey's request for the forms was dated February 19, which was after the time he had filed his suit. Because Mr. Massey had not attempted to use the prison's administrative review procedure prior to the time he filed suit, he had not exhausted his administrative remedies.

3.

Following the district court's dismissal of his complaint, Mr. Massey filed a motion to alter or amend the court's order. He attached to his motion an affidavit from his attorney in which his attorney stated that he had credible evidence that there was a conspiracy at FCC Pekin to deny inmates access to the prison's administrative review process.

The district court denied Mr. Massey's motion without addressing the attorney's affidavit. Mr. Massey then filed this appeal.

II

DISCUSSION

We review a district court's dismissal of a complaint de novo. See Massey I, 196 F.3d at 732. We accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. See id. We shall affirm the dismissal only if it is clear that no relief is warranted under any set of facts that could be proven consistent with the allegations. See id.

Following its amendment by the Prison Litigation Reform Act of 1995,/7 42 U.S.C. sec. 1997e(a) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In an effort to excuse his failure to employ FCC Pekin's four-step administrative review procedure, Mr. Massey offers several explanations for why administrative remedies are not "available" to him within the meaning of sec. 1997e(a).

A.

Mr. Massey submits that there are no administrative remedies available to him because FCC Pekin's grievance procedure cannot provide him with money damages, which is the only form of relief he seeks. The Supreme Court's recent decision in Booth forecloses this argument. The Supreme Court held in Booth that, so long as the relevant administrative process has the authority to take some action in response to a complaint, an inmate must exhaust that process, even if he will not obtain the specific form of relief he desires. See Booth v. Churner, 121 S. Ct. 1819, 1823 & 1825 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative

procedures."). Mr. Massey has not alleged that FCC Pekin has no authority to respond to his administrative complaint in some manner; instead, he alleges only that using FCC Pekin's grievance process would be futile because it will not provide him with money damages. Booth mandates, however, that we may "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 1825 n.6. Thus, we cannot accept Mr. Massey's argument that there are no administrative remedies available to him because the prison cannot give him money damages. Mr. Massey was required to exhaust FCC Pekin's administrative review process before filing suit in federal court regardless of the type of relief he sought.

B.

   Mr. Massey offers another explanation for why there are no administrative remedies available to him. He claims that he was denied the forms he needed to register a complaint through FCC Pekin's administrative review process, which rendered that process unavailable to him. To support his claim, Mr. Massey points to Wheeler's refusal to give him the BP–8, 9, 10, and 11 forms. Like the district court, we do not believe that Wheeler's refusal to give Mr. Massey the forms supports his assertion that there were no administrative remedies available to him.

   The form on which Mr. Massey submitted his request to Wheeler is dated February 19, 1999. This lawsuit was filed on January 20, 1999, one month before Mr. Massey submitted his request to Wheeler. Even if Wheeler improperly denied Mr. Massey the forms, as he alleges, Mr. Massey makes no claim that he ever requested the forms before he filed the instant suit. Because Mr. Massey made no effort to use the prison's administrative review process prior to the time he filed suit, Wheeler's refusal to provide the forms could not have affected his ability to do so. Mr. Massey's claim that no administrative remedies were available to him because Wheeler refused to give him the BP forms cannot excuse his failure to exhaust./8

C.

Mr. Massey also claims that administrative remedies are not available to him because he has named many of the people who will assess his grievances, including Wheeler and FCC Pekin's warden, as defendants in his various lawsuits. According to Mr. Massey, the dual status of these individuals as decision-makers and as defendants renders them biased, and no true administrative remedy is available to him.

The courts of appeals that have confronted the issue are in agreement that the existence of a prison grievance procedure confers no liberty interest on a prisoner. In Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), the Court of Appeals for the Fourth Circuit held that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state. The Fourth Circuit's decision is in conformity with the earlier decision of the Eighth Circuit in Buckley v. Barlow, 997 F.2d 494 (8th Cir. 1993). In Buckley, the court explained that, although a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedure is a violation of the Constitution. See Buckley, 997 F.2d at 495. A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate. See id.

Indeed, this circuit, in Shango v. Jurich, 681 F.2d 1091, 1100 (7th Cir. 1982), stressed that procedural protections do not in and of themselves create cognizable liberty or property interests. In Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), the Ninth Circuit, citing our decision in Shango, also held that there is no legitimate claim of entitlement to a grievance procedure. The court explained that the Supreme Court has held that "'a State creates a protected liberty [interest] by placing substantive limitations on official discretion.'" Mann, 855 F.2d at 640 (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983)). A procedural protection does not in and of itself create a property or liberty interest.

The Court of Appeals for the Eighth Circuit, in Flick v. Alba, 932 F.2d 728

(8th Cir. 1991), has held that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure. Flick, 932 F.2d at 729. Notably, the court added that the prisoner's right to petition the government for redress is the right of access to the courts, a right that is not compromised by the prison's refusal to entertain his grievance. See id.

Mr. Massey has yet to submit a grievance and has offered no evidentiary support for his assertion that the decision-makers who will address his grievance are biased against him. Without ever having filed a grievance with respect to the medical care problems at issue here, Mr. Massey cannot even point to an adverse result arguably reached because of bias. He therefore cannot claim that the participation of the defendants in the processing of the grievance at issue ever has impeded his ability to seek meaningful review in the courts./9

Allegations of specific unfairness can be adjudicated by the district court in due course once Mr. Massey has complied with the exhaustion requirement of sec. 1997e(a). In the present procedural posture, we do not believe that Mr. Massey's conclusory allegation that the prison's grievance procedure will be unfair because some of the decision-makers have been named as defendants renders that procedure unavailable to him within the meaning of sec. 1997e(a).

Conclusion

Mr. Massey was required to exhaust FCC Pekin's administrative remedies even though those remedies would not provide him with the money damages he sought. His other arguments do not establish that the prison's administrative remedies were unavailable to him. Therefore, the district court did not err in dismissing Mr. Massey's complaint for failure to exhaust.

AFFIRMED

FOOTNOTES

/1 Dr. John Otten, a physician at FCC Pekin, originally was a plaintiff in this suit as well. He

sued the defendants for retaliatory discharge and also brought an Eighth Amendment claim on behalf of his patients. The district court dismissed the retaliatory discharge count for failure to state a claim and dismissed the Eighth Amendment claim for lack of standing. Dr. Otten has not appealed.

/2 Mr. Massey filed an earlier appeal very similar to this one in which we issued a published opinion. See Massey v. Helman, 196 F.3d 727 (7th Cir. 2000), cert. denied, 121 S. Ct. 2214 (2001). Familiarity with the facts of the case as set forth in that opinion is assumed, and we limit our recitation of the facts here to those necessary to an understanding of the issues presented in this appeal.

/3 Like Mr. Massey, the other inmate-plaintiffs in this case suffered from various medical maladies, including keloid scars, arthritis, various skin conditions, injured joints, tonsillitis, and diabetes. Also like Mr. Massey, the other plaintiffs sought medical assistance from FCC Pekin's health services unit and were dissatisfied with the care they initially received.

/4 See 28 C.F.R. sec. 542.13(a) (requiring wardens to establish procedures by which inmates may present concerns to the prison staff for informal resolution).

/5 Some of the other inmate-plaintiffs did file one or two of the BP forms, but none of them completed the four-step process.

/6 Mr. Massey's second suit, Massey II, alleged that the prison violated his constitutional rights by restricting his unmonitored telephone conversations with his attorney. See Massey v. Wheeler, 221 F.3d 1030, 1032-33 (7th Cir. 2000). We upheld the district court's dismissal of Mr. Massey's complaint for failure to exhaust administrative remedies. See id. at 1034. In doing so, we determined that Mr. Massey's allegation in his complaint that there were no administrative remedies available to him because "any administrative remedies that are claimed to exist are in fact a sham" was insufficient to avoid the exhaustion requirement of sec. 1997e(a). Id. (internal quotation marks omitted).

/7 Pub. L. No. 104-134, 110 Stat. 1321-71.

/8 Mr. Massey argues that the district court should have converted the defendants' motion to dismiss into a motion for summary judgment and allowed him to conduct discovery because the defendants had attached affidavits to their motion. Although the district court stated that it did not rely on the parties' extraneous submissions in reaching

its decision to dismiss the complaint, the court did look at the date on Mr. Massey's request for the BP forms to determine whether he submitted the request prior to the time he filed suit. Technically, then, the district court did consult matters outside of the pleadings, which effectively converted the motion to dismiss into one for summary judgment on this issue. See Fed. R. Civ. P. 12(c). The district court should have given Mr. Massey notice of the Rule 12 conversion and an opportunity to respond. See id.; see also Alioto v. Marshall Field's & Co., 77 F.3d 934, 936 (7th Cir. 1996). However, this procedural oversight does not require reversal if there is nothing the litigants could have submitted to the court that would have created a genuine issue of material fact. See Alioto, 77 F.3d at 936. In this case, the date on Mr. Massey's request for the BP forms demonstrates that no amount of discovery or additional argument could have created a genuine issue of material fact as to whether Mr. Massey tried to use the prison's administrative review procedure prior to having filed suit; it is clear that he did not. Moreover, the arguments Mr. Massey makes in an attempt to demonstrate that administrative review was unavailable or that the defendants ought to be estopped from relying on the exhaustion requirement presuppose that he made a timely request for the BP forms, which he did not do. Consequently, the district court's failure to provide the proper notice does not require reversal. Cf. In re Wade, 969 F.2d 241, 249 n.10 (7th Cir. 1992) ("When conversion should have, but did not, take place, the district court will not be reversed if nothing else could have been submitted that would alter a finding of summary judgment.").

/9 Mr. Massey contends that the existence of actual bias is demonstrated by (1) Wheeler's refusal to give him the BP forms and (2) the affidavit that his attorney submitted to the district court in which the attorney alleged that he had credible evidence that there was a conspiracy among FCC Pekin officials to deny inmates access to the prison's administrative review process. Neither of these submissions will salvage Mr. Massey's claim. As we noted earlier, Wheeler's refusal to provide him with all of the grievance forms at the same time did not come until after Mr. Massey had filed his complaint in this action. The affidavit of Mr. Massey's attorney also is of no help. The attorney's affidavit is conclusory and unsupported. Moreover, Mr. Massey did not submit the affidavit to the district court until he filed his motion to alter or amend judgment. "A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." Oto v. Metro. Life Ins. Co.,

224 F.3d 601, 606 (7th Cir. 2000), cert. denied, 121 S. Ct. 1097 (2001). The affidavit submitted by Mr. Massey's attorney was executed on June 1, 1999. The district court did not dismiss Mr. Massey's complaint until November 30, 1999. The attorney's affidavit was available prior to the time the district court dismissed Mr. Massey's complaint, but Mr. Massey did not offer any explanation to the district court as to why he had not submitted the affidavit earlier. Given the untimely filing of the affidavit, Mr. Massey's failure to explain the tardiness, and the conclusory nature of the affidavit, the district court did not err in failing to consider the allegations it contained.